Giovanni Del Drago v. Commissioner.
Drago v. Commissioner
Docket No. 36076.
United States Tax Court
1953 Tax Ct. Memo LEXIS 182; 12 T.C.M. (CCH) 745; T.C.M. (RIA) 53237; June 30, 1953
*182 Joshua Okun, Esq., and Isaac Okun, C.P.A., 250 West 57th Street, New York, N. Y., for the petitioner. John J. O'Toole, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in income tax in the amount of $3,222.07, together with a negligence penalty of $161.10, for the calendar year 1945. The issues are (1) whether the income from certain securities owned by petitioner allegedly as a trustee is taxable to him, and (2) whether the negligence penalty was correctly imposed. Findings of Fact Most of the facts were stipulated and they are hereby found. Petitioner, an individual, filed his return for the period involved with the collector of internal revenue for the third district of New York. Petitioner became indebted to his nephew, Urbano Del Drago, hereinafter called Urbano, as an outgrowth of the settlement of the estate of petitioner's father. During the late 1920's and early 1930's, Urbano made repeated demands for payment but petitioner expressed his regret over the financial impossibility of acceding to these requests. Petitioner's financial condition first warranted payment of this obligation *183 following the death of his wife in 1937, but court litigation involving petitioner's required assets was not completed until 1942. By this time the Second World War prevented any dealings with Urbano, a national of Italy. On or about Christmas, 1944, petitioner in New York cabled a relative in Portugal to "Tell Urbano everything is okay." At about the same time, petitioner notified the National Provincial Bank in London, England, to liquidate his nongovernmental assets and to buy bonds of the British Government. By March 13, 1945, the National Provincial Bank had converted enough of petitioner's nongovernmental securities to raise the total of his British government bonds to [*] 50,000. These bonds are as follows: Date of
Type of Bond
Amount
Purchase
4% British Funding
Loan 1960/70
[*] 13,500
owned by peti-
tioner on Dec.
25, 1944
3 1/2% British War
Loan
[*] 13,800
owned by peti-
tioner on Dec.
25, 1944
3% British Savings
Bonds
[*] 22,700
purchased be-
tween Jan. 15,
1945 and Feb.
1, 1945 with
proceeds of se-
curities sold
on Dec. 29,
1944, except
[*] 190.15.8, pur-
chased on
March 13, 1945.
*184 Petitioner did not transfer the [*] 50,000 directly to Urbano because of British currency restrictions which prohibited the transfer of British Sterling securities by a resident of a country outside the British Sterling area to a resident of another country outside that area or to another for the benefit of such a person. From July 15, 1946 until 1950, petitioner made several attempts to expedite the transfer of these securities to Urbano or to establish a trust for him. He invoked the aid of Hargrove & Co. (English attorneys), the National Provincial Bank and the Bank of England. The British debentures owned by petitioner were carried in an American account designated "Giovanni Del Drago U.S. Registered A/c U.S. 66761." In addition to the [*] 50,000, the account contained [*] 4,866.3.11 which petitioner devoted to his own personal use. During the period when petitioner was unable to transfer the [*] 50,000, he never used any part of it or the income earned on it, for his personal use. By agreement of Urbano and in accordance with a condition originally imposed by petitioner in 1944, petitioner directed the National Provincial Bank to pay a certain portion of the income *185 from the [*] 50,000 of securities to Alfonso Del Drago, petitioner's nephew and Urbano's brother who resided in Sydney, Australia. The [*] 50,000 was transferred to Urbano in June, 1950. Petitioner did not create an express trust during the year 1945 with respect to securities owned by him and on deposit with the National Provincial Bank. A court of equity was never petitioned for the purpose of creating a trust with respect to these debentures. No implied trust was ever impressed over the subject funds. Petitioner was not negligent in failing to include in his taxable income for the year 1945, the interest upon British debentures owned by him and on deposit in the National Provincial Bank of London. Opinion Petitioner's claim to be relieved of tax on the income from the securities in controversy as the settlor of an express trust contracts at the outset what seem to us insuperable difficulties. The indirect communication in 1944 is obviously inadequate as either a gift or a declaration of trust, and petitioner did not so treat it. No mention of the existence of a trust nor indeed of the trust property appears. The only other actions relied upon are either the conversion *186 of petitioner's British securities or his mental decision that these securities were eventually to be delivered to Urbano. Even the precise property to be placed in trust was not selected out of the fungible mass nor set aside; and no document, no actual nor symbolic delivery, nor even an oral statement to a third person, is suggested by the record. Without some such ceremonial the trust would in no event be enforceable. ; . It is possible, of course, that the existence of the securities in Britain would make it necessary to apply to the creation of the trust not the New York, but the British law. 2 Beale, Treatise on the Conflict of Laws, Section 294.3. If so, that would be a matter of proof, , as to which there is no evidence to sustain petitioner's burden; rather, from what we do know it appears that the creation of such a trust under the circumstances then existing was actually contrary to the contemporaneous legal pattern prevailing in Britain. We find the record entirely barren *187 of that evidence which would convince us that a court of equity would enforce any obligation upon petitioner as trustee. Since legal title was his and the income subject to his command, the most that can be said is that it could be used to discharge his obligation. This would not relieve him of the liability to pay tax upon it. , affd. . Although there is no evidence directly bearing upon the question of petitioner's negligence, we credit his assumption that under the circumstances he had divested himself of any right to the income. The complications of the situation are such as to persuade us that petitioner was not negligent in failing to report the income as his own, and that for this reason the negligence penalty should not be imposed. ; see . Decision will be entered under Rule 50.